Davis, J.,
delivered the opinion of the court:
A patent was issued to plaintiff for a device intended to cut sheets of stamps in such a .manner that they come from the machine not entirely separated, but so cut that they can be easily torn apart. The device was intended to supersede the pin-machine, which produced the same result in the familiar manner of punching a series of holes between the stamps, and plaintiff’s device hád certain advantages oyer the pin-machine which led to its general but not exclusive use in the Bureau of Engraving and Printing.
For a period of some thirteen years, beginning in 1864 and •ending in 1877, plaintiff was almost continuously in the employ of the Bureau of Engraving and Printing as a machinist; and during most of his service he was required to care for and re pair machinery in the separating room, where work of the nature performed by his device was carried on. While perfecting his invention plaintiff was paid as a machinist; he used Government property of trifling value in making his device; he worked upon it in office hours; he used Government tools and machinery in its preparation, and the Government paid the expenses and fees incident to the issue of his patent.
The case, then, seems to fall within the rulings heretofore . made by this court in the cases of Solomons and Davis (22 C. Cls. R., 342; 23 C. Cls. R., 329).
A distinction is sought to be drawn between the right to the machine itself and the right to use the machine, upon the theory that the actual use of the machine was in this case coupled with a condition for payment. It appears from the findings that a written assignment was made by plaintiff to defendants, which in its terms was absolute; by it plaintiff for “ the sum of $1 and other valuable considerations to be paid” licensed the Government to “ make and use” his invention during the- term of the patent. This absolute assignment was qualified by a con.temporaneous understanding that the free use should only last *253 while plaintiff was retained as an employé in'the Bureau of Engraving and Printing.
In the view we take of the case the distinction does not seem important. Plaintiff made his invention while caring for machines similar to his own; true, it was not part of his duty to invent, but it was his duty to do anything found necessary to secure from the machines under his charge most efficient service, to make all repairs to the machines, and to suggest and. apply any improvements which might occur to him, not as an inventor, but as a skilled mechanic. The Government had a right to his tíme and to his best efforts as a machinist. While so employed he devised an improvement to be applied to machines then under his charge; admitting that this improvement-was the product of inventive genius as distinguished from mechanical skill, still the work was largely done in office hours when plaintiff was receiving pay; it was done entirely with Government tools and machinery; and the Government paid for the patent. The device was not used until 1879, when the plaintiff was no longer in the service of the Bureau, and before it worked efficiently the improvement required certain-mechanical changes; these were made and the device was perfected and applied by Government machinists using Government tools and material. The case therefore falls within -the rule laid down in Solomon’s Case (supra.)
There have been introduced in evidence as anticipating plaintiff’s invention three patents; one is for a paper-cutting- machine, consisting of two circular knives fitted to parallel horizontal shafts, one above the other, and so adapted that the cutting edges of the knives slightly pass each other when rotated, and operating as shears cut a sheet of paper passed between them. Another is a similar device for cutting leather bands.. These devices both make a clean cut and are without slots. The third patent is for a machine to cut leather fly nets for horses, thus constructed; round or circular knives are fitted upon a small horizontal shaft “ with a round or circular plate of smaller size also fitted upon the same shaft between the knives, with spaces of uniform size and distances cut out of the edges of the knives, and when the required number of knives is fitted up on the shaft the whole is firmly united, forming a firm cylinder-by means of nuts and screws at the end of the shaft.” Elsewhere in this specification the knives are described as “ cir *254 cular,” as placed upon a horizontal shaft or cylinder, with. “ spaces or breaks ” in the knives. This cylinder when revolved cuts upon a corresponding but smooth cylinder fitted with grooves. The machine makes incisions in leather passed through it, leaving alternate breaks and producing a diamond net-work.
We do not find in this machine the two sets of knives acting as shears, but we do find the circular slotted knife.
Whether with the fly-net machine and the paper-cutting machine before him it required on the part of plaintiff anything more than the skill of a mechanic to slot the circular knives of the cutter may well be doubted. But this question it is not necessary now to discuss as for the reasons already stated the petition is dismissed.